UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN MCSWAIN,

                  Plaintiff,            Civil Action No. 20-12684

v.                                  Terrence G. Berg
                                  United States District Judge

B. WEST, VANCE, ANGELA        David R. Grand
SUYDAM, SHERMAN              United States Magistrate Judge
CAMPBELL, WARNER, D. MARTIN,
B. AMSDILL, DAVID MESSER

                  Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 30)

*Pro se* plaintiff Shawn McSwain ("McSwain"), an incarcerated person, brings this civil rights action pursuant to 42 U.S.C. § 1983, against eight employees of the Michigan Department of Corrections ("MDOC"). (ECF No. 1). An Order of Reference was entered on November 12, 2020, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 9).

On April 19, 2021, MDOC employees Brian West, James Vance, Sherman Campbell, David Martin, William Amsdill, and David Messer (collectively, "Defendants")[1] filed a Motion for Summary Judgment on the Basis of Exhaustion. (ECF

---

[1] Defendants' counsel notes in his supporting brief that he "has yet to receive paperwork requesting representation from Prison Counselor Angela Suydam or CO Warner, and he does not represent them." (ECF No. 30, PageID.116).

No. 30).  McSwain filed a response to this motion on July 6, 2021 (ECF No. 33), and Defendants filed a reply on July 28, 2021 (ECF No. 34).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody.  *See* E.D. Mich. LR 7.1(f).  Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

# I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 30)** be **GRANTED IN PART AND DENIED IN PART**.

# II.    REPORT

## A.     Background

### i.  The Underlying Incidents

McSwain is a MDOC prisoner who is currently confined at the Saginaw Correctional Facility in Freeland, Michigan.  He brings this § 1983 civil rights action, alleging violations of his First and Eighth Amendment rights, as well as the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.  (ECF No. 1, PageID.4).  At the time of the events at issue in his complaint, McSwain was housed at the Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan.

In his complaint, McSwain alleges that, on April 29, 2020, he was lying down in his cell room when he suffered a "slight seizure" and could not respond to Correctional Officer Warner's ("Warner") "call over the PA System."  (ECF No. 1, PageID.7).  Based on

McSwain's failure to respond, Correctional Officer Brian West ("West") allegedly entered McSwain's cell room unannounced, placed a misconduct ticket on the side of his bunk, and "grabbed [and] fondled [his] right buttocks" before leaving the cell. (*Id.*). McSwain contends that he filed a Prison Rape Elimination Act ("PREA") grievance the next day, on April 30, 2020. (*Id.*, PageID.10-11). McSwain contends that, one week later, Prison Counselor Angela Suydam ("Suydam") called him into her office, asked about his PREA grievance, and told him, "West will not be working on your wing or be around you[,] but he can work in the unit." (*Id.*, PageID.7). He told Suydam that he was "afraid for [his] life [and] safety [and] health," but she kept "sending C/O West down to [his] room . . . with [his] mail and other institutionalized correspondence." (*Id.*).

According to McSwain, Correctional Officer James Vance ("Vance") also threatened to "kill" and "harm" him, and Warden Sherman Campbell ("Campbell") allowed West to continue working in McSwain's unit "knowing that it was causing conflict." (*Id.*). He alleges that Resident Unit Manager David Martin ("Martin") "kept retaliating by having staff write outrageous misconduct tickets," "raising [his] points," and giving him "outstanding sanctions to keep [him] from talking to [his] family, kids, loved ones, and attorney." (*Id.*). He asserts that, "since [the] assault happened," he was "given 14 misconduct tickets in retaliation for writing & filing [the] PREA-Grievance." (*Id.* at PageID.5). He contends that the correctional officers knew he was handicapped and could not defend himself, so he was in fear for his safety, health, and life. (*Id.*, PageID.5-6).

McSwain goes on to allege that Deputy Warden David Messer ("Messer") refused to answer his kites or speak to him about the assault, and Campbell "did nothing to protect

[him] from" Warner, Vance, West, Suydam, Martin, or Correctional Officer Billy Amsdill ("Amsdill").  (*Id.*).  He asserts that Warner, Amsdill, West, and Vance placed him "under extreme duress" and in "fear for his life," West assaulted him, Suydam sent West to him, and Martin retaliated against him for filing complaints.  (*Id.*, PageID.7).  He contends that, as a result of the events as alleged above, he sustained injuries in the form of "blood clots, continuous mild seizures, a[n]xiety attacks, panic attacks, high blood pressure, [and] emotional psychological distress," for which he has been "denied medical s[i]nce 4-29-20."  (*Id.*, PageID.8).  Among other relief, McSwain seeks injunctive relief in the form of psychological treatment or therapy sessions and dismissal of all misconducts on his prison records, as well as monetary damages against Defendants in their official and individual capacities.  (*Id.*).

## ii. Issues with McSwain's Grievances

Principally at issue in the Defendants' summary judgment motion is whether McSwain properly exhausted his grievances against them related to the foregoing incidents at ARF.  In his complaint, McSwain asserts that he filed a PREA grievance in the "mail box in front of [ARF's] chow hall" on April 30, 2020, which alleged that: (1) West grabbed his right buttocks on April 29th, and (2) West was "sent down [to his cell] deliberately" by Warner, Martin, and Suydam to "harass, intimidate . . . and retaliate [against]" him.  (*Id.*, PageID.10; see also, *id.*, PageID.11 ("filed the [PREA] grievance on 4-30-20")).  However, he contends that "nothing happened[,] no investigation took place, [and] no one bothered to investigate the officer."  (*Id.*).  He further alleges that he wrote an "Emergency PREA" but nothing was done about it, he was not allowed to call the "PREA-Hotline," Internal

4

Affairs "was not notified," and Campbell "refuse[d] to protect [him] from these officers." (*Id.*, PageID.7).

According to McSwain, because he allegedly never received a Step I response for his PREA grievance, he filed a "2nd one," but still received no response.  (*Id.*, PageID.11). He asserts that 54 days after filing his grievance, he talked to Suydam and Campbell in June 2020, who told him that he "went outside the facility," they could not "deal with" or "help" him, and he was "bad news."  (*Id.*).  He contends that he tried twice to get a response to his "PREA Grievance and the Step I & Step II Appeals Form" but did not receive them. (*Id.*).  Finally, he alleges that he was "told the case was being investigated," but it was not, so he "went so far as to write CJ Carlson PREA manager in Lansing," but received no response because his "mail has been thrown in the garbage" due to the officers' "retaliation/assaults/abuse."  (*Id.*).

Defendants now move for summary judgment on McSwain's claims against them, arguing that he failed to properly exhaust his administrative remedies before filing the instant lawsuit.

### B.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a

genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C.   Analysis**

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the

agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court.  *See Woodford*, 548 U.S. at 89.  The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93.  Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90.  In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 200 (2007).  Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof.  *See id.* at 216; *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019).

In their motion, Defendants argue that summary judgment is warranted on McSwain's claims against them because McSwain failed to properly exhaust his administrative remedies, as required by the PLRA.  (ECF No. 18, PageID.104-11). Specifically, Defendants argue that (1) McSwain did not exhaust any claims of sexual abuse through the PREA grievance process, (2) he did not exhaust any other grievable claims in his complaint through Step III of the MDOC's grievance process, and (3) he did not exhaust any of his non-grievable claims relating to retaliatory misconduct tickets through the misconduct hearing process.  The Court will address each in turn.

### 1. Claim of Sexual Abuse

In April 2016, Michigan's correctional facilities adopted a two-step PREA grievance process for allegations of sexual misconduct, governed by MDOC Policy Directive 03.03.140, entitled "Prison Rape Elimination Act (PREA) and Prohibited Sexual

Conduct Involving Prisoners" (the "PREA Policy").  (ECF No. 30-4, PageID.150); *Does 8-10*, 945 F.3d at 955.  A state prisoner must pursue a PREA grievance "through both steps of the PREA grievance process" before he can file a lawsuit challenging the alleged sexual abuse.  (ECF No. 30-4 at ¶ EE).  "PREA Grievances alleging sexual abuse shall not be denied or rejected."  (*Id.*).

At Step I, a prisoner must submit a PREA grievance to the PREA Coordinator or appropriate staff, as identified by the Warden, of the institution at the which the prisoner is housed.  (*Id.* at ¶¶ M, FF, GG).  Sexual abuse of a prisoner by an employee includes "[a]ny other intentional contact, either directly or through clothing, of or with the . . . buttocks."  (*Id.* at ¶ H).  PREA grievances containing issues other than sexual abuse shall be denied and returned to the grievant, and PREA grievances containing both sexual and non-sexual abuse issues shall be processed as to the sexual abuse issues only.  (*Id.* at ¶ II).  "All reported allegations of staff sexual misconduct/sexual harassment . . . whether reported verbally or in writing, shall be referred for investigation."  (*Id.* at ¶ BBB).  Moreover, all such allegations, as well as information on the outcome of each investigation, shall be "entered into the MDOC computerized database at their respective facilities."   (*Id.* at ¶ XX).

If a prisoner files a Step I PREA grievance, the PREA Coordinator or appropriate staff must provide a written response to the prisoner "within 60 calendar days of receipt of the Step I PREA grievance, absent an extension."  (*Id.* at ¶ KK).  "Prisoners may appeal a Step I decision to Step II if s/he is dissatisfied with the Step I response or did not receive a Step I response in a timely manner."  (*Id.* at ¶ LL).  The Step II response serves as the MDOC's final decision and "shall be issued within 90 calendar days of receipt of the Step

8

I PREA Grievance, absent an extension." (*Id.*).

In their motion, Defendants argue that McSwain did not exhaust any claims through the PREA grievance process. (ECF No. 30, PageID.127). Specifically, they contend that a review of the MDOC's Administrative Investigations Management ("AIM") database shows that McSwain did not pursue a PREA grievance against West resulting in an investigation, which means that: (1) he did not file a PREA grievance at all; or (2) if he did, it did not properly allege any incidents of sexual abuse under the PREA Policy. (*Id.*). In support of their argument, Defendants attach to their motion the PREA Policy and an affidavit from Jaquine Castillo ("Castillo"). (ECF Nos. 30-4, 30-5).

In her affidavit, Castillo attests that she works as a Litigation Specialist at MDOC's Office of Legal Affairs in Lansing, where one of her primary duties is to act as a liaison between attorneys at the Michigan Department of Attorney General, the MDOC facilities, and the MDOC Central Office. (ECF No. 30-5, PageID.161). According to Castillo, the AIM database tracks all allegations of employee work rule violations, including the PREA and discriminatory harassment complaints. (*Id.*, PageID.162). She attests that she "reviewed the AIM database for investigations initiated by McSwain [and] did not find any investigations arising out of a PREA complaint filed by McSwain." (*Id.*).

In his response to Defendants' motion, McSwain does not refer at all to any alleged act of sexual abuse or a PREA grievance, but only broadly asserts that the MDOC has a "pattern of bad faith actions denying access to administrative relief and not providing reasonable responses to complaints made through the grievance procedure." (ECF No. 33,

PageID.210).[2]

In their reply, Defendants argue that McSwain did not address their arguments that he failed to exhaust his claims through the PREA grievance process, so their summary judgment motion should be considered unopposed.  (ECF No. 34, PageID.219).

As an initial matter, McSwain's perplexing response to Defendants' summary judgment motion warrants some further discussion, as it does not appear to address any of his claims regarding sexual abuse, intimidation/harassment, or retaliation that are at issue in this case.  He instead asserts that he "suffered injury 4-29-20," that he was "denied medical treatment," and that he filed "numerous grievances . . . regarding lack of medical treatment to humane medical care related to 4-29-20 injury."  (ECF No. 33, PageID.210). Indeed, the only two grievances mentioned in his response – "ARF-20-03-0554-17I" and "LCF 2003 002 15028E" – are both apparently regarding lack of "humane" medical treatment.  (*Id.*).  The problem, however, is that there are no allegations in his complaint stating that he requested specific medical care of any kind, what medical treatment he required but did not receive, or that he filed any grievances asserting a lack of medical

---

[2] Based on his complaint, however, McSwain's position appears to be that his PREA grievances were ignored or "thrown in the garbage."  (ECF No. 1 PageID.10-11).  The U.S. Supreme Court has reiterated that the PLRA's exhaustion requirement hinges on the *availability* of administrative remedies: an inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).  Courts have recognized, in some circumstances, that "although completing [all steps of the grievance process] is a sufficient condition, it is not always a necessary one."  *Palmer v. Flore*, 3 F. Supp. 3d 632, 637 (E.D. Mich. 2014); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (the Sixth Circuit requires an inmate to make affirmative efforts to comply with the administrative procedures and analyzes whether those efforts to exhaust were sufficient under the circumstances).  To the extent McSwain asserts that the PREA grievance process was "unavailable" to him, as discussed in more detail below, he presents no *evidence* to support such an assertion.

treatment.  Moreover, while his response cites to an "Exhibit A" and "Exhibit B," there are no such exhibits attached to his response, nor to his complaint.  (*Id.*).  In the end, as discussed below, McSwain's failure to present any *evidence* throughout these proceedings ultimately proves fatal to his case.

Here, Defendants have established through Castillo's affidavit that McSwain never filed a proper PREA grievance against West, as there is no entry for him in the AIM database triggering an investigation for sexual abuse.  (ECF No. 30-5, PageID.162).  And because McSwain's response does not at all dispute, much less present evidence disputing, Castillo's affidavit or the accuracy of the AIM database, Defendants are entitled to summary judgment on this claim based on McSwain's failure to exhaust.

Indeed, courts have made clear that, in responding to a summary judgment motion, the opposing party may not rest on its pleadings, but must make an affirmative showing with proper *evidence* to defeat the motion.  *Alexander*, 576 F.3d at 558 (internal quotations omitted).  McSwain, however, presents no actual evidence that he reported a sexual abuse, filed a Step I PREA grievance, or appealed to Step II of the PREA grievance process. Instead, he makes broad statements (in his complaint) that he filed grievances, complained to Defendants, and otherwise mailed kites and letters, but these vague statements are not "evidence" the Court may consider at the summary judgment stage.  *See Veeder v. Tri-Cap*, No. 17-11690, 2018 WL 7254610, at *8 (E.D. Mich. Dec. 13, 2018).  On this basis alone, McSwain has failed to raise a material question of fact as to whether he properly

exhausted any PREA grievances against West.[3]

A contrary ruling would render the exhaustion requirement meaningless, as a prisoner who actually failed to file a Step I PREA grievance or Step II appeal could always simply claim to have done so. While this view could theoretically incentivize prisons to "lose" or "throw away" grievances and/or appeal forms, caselaw reflects that adequate protections exist against such concerns. *See, e.g.*, *Young v. Jackson*, No. 12-12751, 2013 WL 8178397, at *8-9 (E.D. Mich. Nov. 13, 2013) (rejecting defendants' failure to exhaust argument where plaintiff provided copies of numerous letters requesting a Step II grievance appeal form from the appropriate grievance coordinator, but allegedly was not provided one); *Graham v. Chicowski*, No. 16-12258, 2017 WL 3097803, at *5 (E.D. Mich. Apr. 18, 2017) (finding that plaintiff raised a question of fact as to the "availability" of the grievance process where he provided copies of several letters he had written and evidence demonstrating that his family made calls and wrote letters on his behalf to advance his grievance). The issue boils down to the prisoner presenting sufficient *evidence* to at least raise a material question of fact that he took reasonable steps to properly exhaust his

---

[3] Moreover, while a plaintiff need not plead proper exhaustion in his complaint, the Court notes that the allegations in McSwain's complaint do nothing to change the above analysis, and in fact, further support the Court's finding that McSwain failed to raise a material question of fact as to whether he properly exhausted a PREA grievance. First, careful review of the PREA Policy makes clear that McSwain was required to submit his PREA grievance to either the "PREA Coordinator" or "appropriate staff" as designated by his facility's Warden. (ECF No. 30-4, PageID.155, ¶¶ M, GG, KK). In contrast, McSwain states that he placed his PREA Grievance in a mailbox in front of the chow hall. (ECF No. 1, PageID.10). And even assuming that it was proper for him to place a PREA grievance in that mailbox, the PREA Policy required him to "appeal a Step I decision to Step II if he . . . did not receive a Step I response in a timely manner." (ECF No. 30-4, PageID.155, ¶ LL). However, McSwain admits that when he allegedly did not receive a timely Step I response, he did not appeal his alleged PREA grievance to Step II. (ECF No. 1, PageID.11). Rather, McSwain alleges that he instead filed a "2nd one" and spoke to certain Defendants.

grievance – and McSwain has simply failed to do so here.  At a minimum, he could have provided the Court with a copy of his kites or letters allegedly complaining about a lack of response to his grievances.  Instead, he merely asserts that he received no response and/or that his grievances were thrown out, which is insufficient to raise a genuine question of material fact.  And, as discussed above, even a discarded Step I grievance would not have prevented McSwain from following the PREA Policy's requirement of submitting a Step II appeal when he did not timely receive a Step I response.  Thus, summary judgment should be granted on McSwain's sexual abuse claim.

### 2.  Claims of Retaliatory Intimidation and Harassment

In Michigan's correctional facilities, prisoner grievances are generally governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "General Grievance Policy").  (ECF No. 30-2, PageID.134).  A state prisoner must first complete the process outlined in the General Grievance Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct.  (*Id.* at ¶ B).  If a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance.  (*Id.* at ¶¶ P, V).  If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due.  (*Id.* at ¶ BB).  If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id.* at ¶ FF).  Again, an inmate may only pursue a claim in court if he has complied with

his obligations at each of these three steps.  (*Id.* at ¶ B).

In their motion, Defendants assert that, "with the exception of retaliatory misconduct ticket claims and any PREA claims, all of McSwain's claims are grievable under the grievance process."  (ECF No. 30, PageID.126).  They argue, however, that McSwain failed to properly exhaust any relevant claims because his Step III Grievance Report shows that he pursued only one grievance through Step III that is unrelated to this case.  (*Id.*, PageID.126-27).  In support of their argument, Defendants attach to their motion the General Grievance Policy, as well as McSwain's "MDOC Prisoner Step III Grievance Report" ("Step III Grievance Report") and its underlying grievance documents.  (ECF No. 30-3, PageID.144-48).

Relevant here, the Step III Grievance Report reflects that McSwain pursued one grievance (ARF-20-03-0554-17I) to Step III of the grievance process.  (ECF No. 30-3, PageID.143).  Of note, the report states that this grievance was filed at Step I on March 24, 2020, and the Step III appeal was received on April 16, 2020.  (*Id.*).

A copy of grievance ARF-20-03-0554-17I reflects that this grievance arose out of an incident on March 15, 2020, in which McSwain allegedly experienced "serious" swelling in his right arm and hand, but was told by a correctional officer to file a grievance instead of allowing him to "go to health care" to get medical treatment.  (*Id.*, PageID.147).  After his grievance was denied at Step I (*Id.*, PageID.148), his appeal was denied at Step II, (*Id.*, PageID.146), and his appeal was again denied at Step III.  (*Id.*, PageID.144-45).

In response to Defendants' motion, McSwain asserts that he exhausted his administrative remedies for grievance ARF-20-03-0554-17I regarding a lack of medical

treatment.  (ECF No. 33, PageID.210).  He also states that he exhausted grievance "LCF 2003 002 15028 E" through Step III.  (*Id.*).  In short, McSwain's response can be summarized by his following statement:

> I . . . have exhausted administrative remedy, yet still continue to seek medical care that is humane and consist[e]nt with my injuries and needs.  Defendants have by action acknowledge[d] the seriousness of my injuries and claims while still failing to provide adequate care.  I have pursued this action only because of repeated denial of adequate care and repeated failure to gain relief through administrative relief (grievance) process.

(*Id.*, PageID.215).

In reply, the Defendants argue that the Step III Grievance Report shows that McSwain only pursued grievance ARF-20-03-554-17I through Step III, which was filed in March 2020 and predates the claims in his complaint.  (ECF No. 34, PageID.218).

Here, McSwain fails to raise a material question of fact as to whether he properly exhausted any general grievances related to the claims he asserts *in this case* of intimidation and harassment in retaliation for his filing a PREA grievance.  First, the Step III Grievance Report reflects that he only pursued through Step III a single grievance (ARF-20-03-0554-17I) asserting a lack of medical treatment for swelling in his right arm in March 2020, which predates the initial sexual abuse incident on April 29, 2020, that serves as the basis for all of his claims.  Second, McSwain otherwise presents *no evidence* showing that he actually filed any other relevant grievances, much less that he pursued any through Step III of the grievance process.[4]  And because McSwain failed to present any actual evidence, his

---

[4] There appears to be a discrepancy between McSwain and Defendants' characterization of a second grievance referenced in McSwain's response.  Specifically, McSwain asserts that he filed

barebones assertion that the grievance process was "unavailable" to him fails for the reasons already addressed above in the PREA grievance analysis.    Accordingly, Defendants are entitled to summary judgment on these claims based on non-exhaustion.

### 3.  Claims of Retaliatory Misconduct Tickets

The General Grievance Policy provides that "[d]ecisions made in hearings conducted by hearing officers of the State Office of Administrative Hearings and Rules . . . [and] minor misconduct hearings" are "non-grievable issues" that "shall be rejected by the grievance coordinator."  (ECF No. 30-2, PageID.134, ¶ F).  Thus, courts have recognized that misconduct tickets are non-grievable, and "the only avenue for challenging [misconduct tickets] is a hearing." *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011); *see also Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739, at *5 (E.D. Mich. Feb. 27, 2019), *report and recommendation adopted*, No. 15-13826, 2019 WL 1349607 (E.D. Mich. Mar. 26, 2019); *Harris-Bey v. Alcodray*, No. 16-12666, 2017 WL 3124328, at *4 (E.D. Mich. Jul. 24, 2017) (finding a plaintiff's claim alleging a retaliatory misconduct ticket was not properly exhausted according to MDOC procedures where he did not allege retaliation at his misconduct hearing and did not appeal the finding of guilt following that hearing).

Misconduct hearings are governed by MDOC Policy Directive 03.02.130, entitled

---

another grievance, "LCF 2003 002 15028 E" (ECF No. 33, PageID.210), which appears to contain an identifier for a different MDOC facility altogether ("LCF," not "ARF").  Meanwhile, in their reply, Defendants characterize this grievance as "ARF-20-03-215-28e" and argue that the identifiers indicate that it was filed on March 2020, predating the claims in the complaint.  Under either characterization, that grievance would not be relevant to his instant claims stemming from an incident at ARF on April 29, 2020.  (ECF No. 33, PageID.210, PageID.215).

"Prisoner Discipline" (the "Discipline Policy").  (ECF No. 30-7, PageID.183).  Unless a prisoner waives the Class II hearing and pleads guilty, a hearing shall be conducted, in accordance with the Discipline Policy, within seven business days after the date of review. (*Id.* at ¶¶ PP, QQ).  If a prisoner is found guilty for a Class II misconduct, he may file an appeal of the facility hearing officer's decision to the Deputy Warden within 15 days after receipt of the hearing officer's written decision.  (*Id.* at ¶ UUU).  A response to the appeal shall be provided in writing within 30 calendar days after receipt of the appeal.  (*Id.* at ¶ WWW).

In their motion, Defendants argue that McSwain failed to exhaust his claims concerning retaliatory misconduct tickets because he "received four misconduct tickets involving violations occurring on April 29, 2020," but failed to challenge those tickets at his misconduct hearings.  (ECF No. 30, PageID.127).  In support, Defendants attach to their motion the Discipline Policy, Castillo's affidavit, and salient misconduct tickets and hearing reports.  (ECF Nos. 30-4, 30-5).

In her affidavit, Castillo attests that McSwain's "misconduct ticket hearing reports" reflect that he "received four misconduct tickets for incidents arising out of April 29, 2020." (ECF No. 30-5, PageID.162).  She states that these reports are records of regularly conducted MDOC activity and are kept in the regular course of MDOC business.  (*Id.*, PageID.163).  Attached to the affidavit is an MDOC "Misconduct Summary Report" for McSwain, reflecting four entries of misconduct on April 29, 2020, (MCR Nos. 71 through 74), which all resulted in findings of guilty after a hearing on May 7, 2020.  (*Id.*, PageID.164).  Notably, the summary report also reflects that McSwain received ten

17

additional misconduct tickets between May 1, 2020, through June 15, 2020, (MCR Nos. 75 through 82, 84 and 85) during his time at ARF, with hearing dates ranging from May 7, 2020, through June 24, 2020.  (*Id.*).

Copies of the "Class II and III Misconduct Hearing Report[s]" and their corresponding misconduct tickets dated April 29, 2020, reflect the following.  (*Id.*, PageID.167-74).  McSwain's first misconduct ticket was issued by Warner for a Class II charge of "Interference with the Administration of Rules" because he was found in the "Activity Room" even though he "had no authorization to be [there] while on sanctions." (*Id.*, PageID.168).  His second misconduct ticket was issued by Amsdill for a Class II charge of "Disobeying a Direct Order" for refusing direct orders to leave the Activity Room while he was on sanctions.  (*Id.*, PageID.170).  His third misconduct ticket was issued by Warner for a Class II charge of "Insolence" because he spoke profanity to a correctional officer who was escorting him out of his unit.  (*Id.*, PageID.172).  Finally, his fourth misconduct ticket was issued by Amsdill for another Class II charge of "Interference with the Administration of Rules" for being in the activity room while on sanctions.  (*Id.*, PageID.174).  The corresponding misconduct hearing reports all state that McSwain refused to participate in the hearings, leaving the hearing officer with no option but to find McSwain guilty because he failed to provide an adequate defense.  (*Id.*, PageID.167, PageID.169, PageID.171, PageID.173).

Here, as detailed above in the PREA and general grievance analyses, McSwain's response does not mention his misconducts tickets, much less present any evidence to dispute the misconduct hearing reports establishing that he did not challenge his four

misconduct tickets issued on April 29, 2020 (MCR Nos. 71 through 74).  Thus, Defendants are entitled to summary judgment based on non-exhaustion as to those four tickets.

Nevertheless, the Court's analysis does not end there because McSwain specifically alleges in his complaint that, "since [the] assault happened," Defendants issued him "**14** misconduct tickets in retaliation for writing & filing [the] PREA-Grievance."  (ECF No. 1, PageID.5) (emphasis added).  Thus, given that Defendants seek summary judgment on all claims of retaliatory misconduct tickets and dismissal of the "lawsuit in its entirety," it is unclear why they limit their motion to addressing only the four misconduct tickets issued on April 29, 2020.  (ECF No. 30, PageID.117, PageID.127; ECF No. 34, PageID.219).

Indeed, consistent with the allegations in McSwain's complaint, Defendants' own Misconduct Summary Report[5] confirms that, while McSwain received four misconduct tickets for violations that allegedly occurred on April 29th, he also received ten more for violations that allegedly occurred between May 1, 2020, and June 15, 2020 (MCR Nos. 75 through 82, 84 and 85).  (ECF No. 30-5, PageID.164).  That's a total of *fourteen* misconduct tickets, *all of which* McSwain contends were issued in retaliation for his "writing & filing" the PREA grievance on April 30, 2020.  (ECF No. 1, PageID.5, 10, 11).  While a misconduct ticket for a violation that occurred on *April 29, 2020*, cannot have been issued in retaliation for McSwain filing his PREA grievance on *April 30, 2020*, Defendants (and Castillo) mistakenly seem to assume the same about the misconduct tickets that were

_____

[5] The Court notes that the Misconduct Summary Report only lists the "Verdict/Finding" and hearing date, without providing any details as to the underlying reason for a verdict, whether McSwain participated in the hearing and challenged his misconduct ticket, or whether the finding of guilt was appealed following the hearing.

issued for violations that occurred *after* April 30, 2020.

Ultimately, Defendants bear the burden of proving non-exhaustion, and they only presented evidence establishing that McSwain failed to challenge his four April 29, 2020 misconduct tickets at a hearing, without at all addressing the other ten misconduct tickets that he alleges were issued "in retaliation for writing & filing [the April 30, 2020] PREA-Grievance." (*Id.*, PageID.5). Thus, because Defendants do not present evidence establishing that McSwain failed to challenge these ten remaining tickets at the respective misconduct hearings or appeal his guilty findings, they failed to meet their initial summary judgment burden of demonstrating the absence of a genuine dispute of material fact as to these particular tickets. *See Celotex*, 477 U.S. at 325; *Alexander*, 576 F.3d at 558. Accordingly, summary judgment should be denied as to McSwain's claims related to the ten misconduct tickets issued at ARF between May 1, 2020, and June 15, 2020 (MCR Nos. 75 through 82, 84 and 85).

## III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment on the Basis of Exhaustion **(ECF No. 30)** be **DENIED** as to McSwain's claims related to the ten alleged retaliatory misconduct tickets issued at ARF between May 1, 2020, and June 15, 2020 (MCR Nos. 75 through 82, 84 and 85), and **GRANTED** as to all other claims.

Dated: September 27, 2021          s/David R. Grand
Ann Arbor, Michigan                DAVID R. GRAND
                                   United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 27, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
